Argued September 13, affirmed October 4, petition for rehearing
denied November 8, 1961

## STATE OF OREGON *v.* BLOOR

365 P. 2d 103
365 P. 2d 1075

*Robert G. Ringo,* Corvallis, argued the cause for
appellant. On the brief were Ringo and Walton, Cor-
vallis.

*J. Alfred Joiner,* District Attorney for Benton County, and *Robert M. Gordon,* Deputy District Attorney for Benton County, Corvallis, argued the cause and filed the brief for respondent.

Before McAllister, Chief Justice, and Rossman, Perry, Sloan, O'Connell, Goodwin and Brand, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment which the circuit court entered December 14, 1960, upon his plea of guilty to an indictment which charged him with the rape of his 13 year old daughter. (ORS 163.220). The indictment was returned by the grand jury of Benton County. The judgment sentenced the defendant to imprisonment in the state penitentiary for a term not exceeding 13 years.

The defendant presents two assignments of error. The first challenges a ruling which denied his motion to set aside his plea of guilty. The motion was based upon the ground that "in the arraignment of the defendant, the Court failed and neglected to inform the defendant of his right to counsel as required by ORS 135.310 and ORS 135.320, and upon Article I, Section 11, Oregon Constitution." The second assignment of error charges that the circuit court erred when it denied the defendant's motion "to permit him to withdraw his plea of guilty and substitute therefor a plea of not guilty." That motion presented contentions that the defendant was in a "state of shock" at the time of the arraignment, that the district attorney knew that he (the defendant) denied the commission of the alleged crime, that the district attorney unfairly persuaded the defendant to plead guilty, and

that the defendant was in fact innocent of the purported crime.

This case has undergone a considerable pilgrimage in the courts, and a narrative of some of its previous episodes is essential to render the assignments of error understandable.

After the defendant's arrest he told the sheriff that he would like to speak to the district attorney and thereupon the latter called upon him. The following testimony given by the district attorney, John Fenner, has not been contradicted:

"I introduced myself to Mr. Bloor. I said I am John Fenner, I am the District Attorney and you don't have to talk to me if you don't want to. I understand you want to make a statement. He said that—something to the effect that God had spoken to him and that he wanted to make things right, or words to that effect. So I said, 'Well would you like to make a statement?' And he said, 'Yes.' I said, 'Well, I will get a pencil and paper.' And he said, 'Well, I don't write very well.' I said, 'Well, we can make a statement on a recording at my office if you wish,' and he said, 'All right.' So that was the extent of the conversation at the jail."

The above having taken place, the sheriff brought the defendant to the district attorney's office where the ensuing questioning was recorded. The record of the questions and answers is an exhibit in this case. It has been transcribed and covers four pages. Each page was signed by the defendant. No one questions the accuracy of the transcription although the defendant, by stating that he does not remember, does not concede that the four pages are an accurate statement of the conversation.

According to the four pages, Mr. Fenner began

the interview by telling the defendant that he was not required to say anything and that he was entitled to have an attorney if he wished one. The defendant replied that he wished to make a statement and that he did not care for an attorney.

We now quote from the transcribed statement which designates Mr. Fenner with the letter "F'", the defendant with the letter "B" and the sheriff (Mr. Lilly) with the letter "L".

"(F) Then it is your wish Mr. Bloor that at this time to make a statement regarding this matter connecting with your daughter and wife?

"(B) All I can say is just what I said before.

"(F) And what did you say before Mr. Bloor?

"(B) A man that would do anything like that is surely possessed of the devil.

"(F) And did you have intercourse with * * * [your daughter] Mr. Bloor?

"(B) Sir I don't know that. I don't know that. I remember fooling with her yes, but as far as that I don't know and I didn't ever think so.

"(F) I am referring to sexual intercourse Mr. Bloor.

"(B) That is what I mean sir, I didn't think that I had ever really.

"(F) Now, we have a statement from * * * [your daughter] Mr. Bloor. Is * * * [she] a truthful child?

"(B) Oh, yes sir she is.

"(F) Now * * * [your daughter] said that on the night of December 10th that you required her to have intercourse, sexual intercourse, with you in the jeep, is that right?

"(B) If she said so sir it is the truth.

"(F) Do you remember it?

"(B) I have got some faint rememberance of fooling with her yes, I have got that. I have honest, but I don't remember of.

"(F) Now do you recall how long a period you have been fooling with * * * [your daughter]?

"(B) No sir, I don't remember. It is just like a dream the whole thing anyway.

*　　　*　　　*

"(F) Do you remember going down to Alsea with * * * [your daughter] on a week ago Wednesday, which would be December 10th, in the evening?

"(B) Yes sir, I remember going.

"(F) Had you been drinking that night?

"(B) Yes sir I had.

"(F) How much did you have to drink?

"(B) I don't know but it was quite a bit I know that.

"(F) And on this occasion what possessed you to have sexual intercourse with * * * [your daughter]?

"(B) Oh sir, I don't know. The devil has got to me. Lack of self control, and just not being on the right side of God is the main thing.

"(F) Sheriff Lilly do you have anything you want to ask Mr. Bloor?

"(L) Can't you give us a little clearer picture of this than you have given us already?

"(B) I will tell you anything I can from now on I am going to be as honest as I can possibly be. Anything that you ask me and I know it I will tell you. That is the truth so help me God.

"(L) This last time do you remember going to Alsea?

"(B) Yes sir I do.

"(L)  To get some groceries?

"(B)  Yes sir I do, I remember going to Alsea and I do remember of what you have been telling me I remember about fooling with * * * [my daughter], but as far as actual intercourse I don't remember that.

\* \* \*

"(L)  Had you been drinking that evening?

"(B)  Yes sir I had. I didn't even think about it or realize it until they come and got * * * [my daughter] and didn't bring her back and the wife came out to find out why and then when she told me I remembered drinking like the dickens. I had a bunch of stuff out in my shop and I was drinking it before I ever went to town, and I believe I got some more after I got up there.

"(L)  What were you drinking?

"(B)  Everything.

\* \* \*

"(F)  Before you got home what did you do?

"(B)  I don't remember, I told you I fooled with her yes, I don't remember if we went on down the highway from our place or just where we stopped, I don't remember sir, I don't remember. I know that we did though, I remember that.

"(L)  And you had her with you when you got back to the house?

"(B)  Oh yes, she was with me.

"(F)  Now when you said you fooled with her you mean you had sexual intercourse with her?

"(B)  Well sir, I told you and this is an honest fact, I don't remember of that. I don't remember of that. I might have fooled with her in that way, but as far as actual intercourse, I don't ever remember that.

"(F)  Well * * * [your daughter] said you did.

"(B)   Well if she did it is the truth. I, I . . . .

"(F)   Well Mr. Bloor is there anything else you would like to say on your behalf, an explanation or anything else you would like to say to go on the record.

\*       \*       \*

"(F)   You understand that in this record you made voluntarily?

"(B)   Yes, voluntarily on my part and if there is anything that I can tell you that is the truth I will do it. I don't care. I just hope that that girl and her mother and all of them forgive me that is all I hope regardless of what happens to me. I'll suffer, I have done it and I will suffer for it.

"(F)   This is the end of a statement being given by William D. Bloor in the office of John Fenner, District Attorney, in the presence of John Fenner and Sheriff Lilly. This is the 19th day of December, 1958, and it is now approximately 10:00 a.m."

Immediately following the statement is the defendant's signature. It appears also on each of the other three pages.

The above statement has not been contradicted by the defendant. When some of its parts were read to him he replied that he could not recall whether he made them or not. His principal contention was that the district attorney persuaded him to plead guilty by telling him that it would save embarrassment for his daughter and other members of his family. The recording of the conversation makes no mention of any statement of that kind, and the district attorney denies that he spoke to the defendant upon that subject. It is agreed that he had only one interview with the defendant.

December 23, 1958, being a day or two after the

defendant's visit in the office of the district attorney, he was arraigned before the Honorable Fred Mc-Henry, judge of the Circuit Court for Benton County. He pled guilty. A complete portrayal of the defendant's appearance before Judge McHenry is set forth in *Bloor v. Gladden*, 227 Or 600, 363 P2d 57. At the time of the arraignment both the defendant's father and older sister were in the courtroom. The father had called upon the defendant shortly after the latter had made his statement to the district attorney. According to the father, the defendant was "in a state of shock," when he visited him. He added that his son "wouldn't listen to me. I wanted to talk to him about bail and a lawyer and he said he had already talked to the district attorney and he told him what to do and he wouldn't listen to me at all."

January 22, 1959, after the psychiatric examination had been completed and a report of it had been sent to the Circuit Court for Benton County the defendant again stood before Judge McHenry—this time for sentence. This occasion was virtually one month after the defendant had entered his plea of guilty. His father and sister were again in the courtroom. The father had called upon the defendant several times while he was in the state hospital and defendant's sister had called upon him at least once in that institution. We observe that the psychiatrist's report, referring to the defendant, states:

"His habits include excessive indulgence in alcohol * * * He readily admits attempting intercourse with his 13-year old daughter but he denies rememberance of actually achieving penetration. * * * He is of normal intelligence. * * *"

After the defendant had been asked by Judge

McHenry whether he wished to make a statement he replied:

"Judge, I want to get everything straightened out. I have another daughter [the defendant gave her name, but we omit it] and there's been a few times I have fooled with her."

When the Judge seemingly didn't hear all of the defendant's words and asked for a repetition the defendant declared:

"I said, another daughter [we omit her name], and a few times I have fooled with her, and I have already told the sheriff some other things that come up over this just now before I come up here."

January 22, 1959, Judge McHenry entered a judgment of guilty and sentenced the defendant to an imprisonment of twenty years in the state penitentiary.

Twenty months after the defendant had been committed to the penitentiary he instituted post conviction proceedings in the Circuit Court for Marion County which challenged the validity of the judgment of guilty which the Circuit Court for Benton County had entered, and particularly the sentence of 20 years. His sister, whom we have mentioned, had retained counsel for him. In the post conviction proceeding the defendant, through the counsel just mentioned, contended that (a) he had been denied his right to legal representation as provided in the Sixth and Fourteenth Amendments of the United States Constitution, (b) he had been deprived of his right to counsel as provided in § 11, Article I of the Oregon Constitution, (c) he was not granted counsel as the latter is rendered available by ORS 135.310 and 135.320, (d) he did not understandingly and volun-

tarily waive his right to counsel, (e) the trial judge did not explain to him that a person without funds may have counsel at public expense, (f) the clerk of the Circuit Court for Benton County failed to comply with ORS 137.113 by serving upon him through registered mail a certified copy of the report made by the psychiatrist. Since they are not material to the issues before us we omit other elements of the charge made by the defendant in the Marion County post conviction proceeding. The Circuit Court for Marion County found that all charges made by the defendant lacked merit except the one which averred that a copy of the psychiatrist's report was not furnished the defendant prior to the imposition of sentence. Based upon that finding alone the sentence of twenty years was vacated.

When the defendant was transferred from the penitentiary to the Benton County jail for resentencing Judge McHenry fixed his bail in the sum of $10,000 and the defendant's father signed the bond. His justification showed that he was worth $20,000 above debts and exempt property.

After the defendant had been released upon the bail bond just mentioned he moved that he be permitted to withdraw his plea of guilty and enter one of not guilty. He contended that (1) he was not advised by Judge McHenry at the time of arraignment that if due to lack of funds he could not employ an attorney the county would bear the expense and (2) that he was not guilty of the charged crime and should be afforded a trial. Following the filing of the motion extensive hearings were conducted in the course of which several witnesses gave testimony. The testimony, as transcribed, covers more than 200 pages and is accompanied with exhibits.

The testimony just mentioned covered a wide range of subjects. It showed, among other details, that the defendant was 34 years of age when he is said to have committed the crime with which this case is concerned. As a youth he had gone to school until he was in the tenth grade (second year of high school). He was of average intelligence. The occupation which he followed prior to his arrest was that of a "gypo" logger. In connection with his occupation he had an expensive tractor and when he worked with it he received $8 an hour.

■ *Bloor v. Gladden*, supra, is this court's decision upon the defendant's appeal from the judgment order entered by the Circuit Court for Marion County in the defendant's post conviction proceeding. A reading of it will show that this court, in that case, gave extensive consideration to the defendant's claim that he was denied right to counsel. Every contention concerning right to counsel which the defendant has now placed before us was submitted in that case also. The decision written by Mr. Justice Sloan rejected the contentions. The decision was unanimous and represented the views of all seven members of the court. It held that all of the demands of the applicable statutes and constitutional provisions had been fully observed. Nothing was denied to the defendant. We remain satisfied with that decision. The first assignment of error is without merit.

We now proceed to the second assignment of error. The defendant contends that Judge McHenry, in the exercise of the discretion with which all trial judges are invested when an accused requests permission to withdraw a plea of guilty, should have granted the permission. The defendant's counsel, with commendable frankness, states: "We agree at the outset that

there must be an abuse of discretion by the trial court. An examination of the facts and circumstances is necessary." We have read the transcript of the extensive testimony which counsel submitted to the trial court. Although the defendant, during the hearing upon his motion which sought the privilege of withdrawing his plea of guilty stated repeatedly that he was in a state of shock at the time of the arraignment, that he was then confused and was unable to think clearly, he makes no contention that he said anything of that kind to the trial judge at the time of the arraignment or sentencing. The latter occurred 30 days after the arraignment. Preceding pages of this opinion quote the answers which the defendant gave to the district attorney during his visit in the latter's office. The answers do not suggest a state of shock, a condition of confusion or an inability on the part of the defendant to think for himself. The district attorney swore that he observed nothing suggesting a state of shock, but noticed some nervousness. We have mentioned that at the time of the arraignment and a month later when the sentence was imposed the defendant's father and sister were in the courtroom. They do not claim that they made any effort to indicate to the trial judge that the defendant was in an unnatural or anomalous condition. The report made by the psychiatrist mentions nothing of an abnormal character and as a witness he was not even asked if he noticed anything unusual. His report states:

"Mr. Bloor is a young man in good physical health. Routine physical, neurological, laboratory and roentgenological examinations reveal no significant abnormalities. He is of normal intelligence and shows a fund of information and ability to comprehend which is in keeping with his intelli-

gence and educational background. He shows no abnormalities in his grasp of his surroundings, nor does he demonstrate any defect in thought processes or content. He is subject to temporary reactive depression as a result of his contemplation of the consequences of his acts. However, he has recovered from these spontaneously. * * *"

The psychiatrist interviewed the defendant several times. The sentencing did not occur until some days after this report had been written.

Surely the trial judge, who paid very close attention to the questioning of the witnesses, would not have proceeded had he noticed anything concerning the defendant which indicated an inability upon his part to look out for himself.

■ It will be recalled from excerpts taken from the record, which are quoted on preceding pages of this opinion, that the defendant made many statements strongly suggestive of his guilt. Those statements were made freely and voluntarily. For example, he volunteered the information that he had "fooled" with a daughter in addition to the one named in the indictment. He swore that he did so several times. His only doubt concerning that iniquitous conduct upon his part was the degree of penetration. After the alleged crime is said to have been committed the defendant left home, went on a long tramp through the woods, got down on his knees daily (so he swore) and about seven days later returned home and sent for the sheriff. We have already mentioned the incidents that occurred after his arrest. In the meantime, however, the grand jury returned its indictment, based upon the testimony of the daughter and an examining physician. We are aware of nothing in the record which can justify a conclusion that the defend-

ant did not enter his plea of guilty voluntarily and as the result of both remorse and a deliberate recognition of guilt.

We are aware of no reason for believing that the trial judge should have permitted the defendant to withdraw his plea of guilty. We find no merit in the second assignment of error.

Affirmed.

## ON REHEARING

Ringo and Walton, Corvallis, for the petition.

ROSSMAN, J.

The defendant moves for a rehearing upon the following ground expressed in his petition:

"The Circuit Court of Benton County, Oregon, had no jurisdiction of the cause between October 11, 1960, and June 21, 1961, which is the period during which *Bloor v. Gladden* in the Circuit Court of Marion County, Oregon. No. 49158, was on appeal to the Supreme Court of Oregon and the order of the Circuit Court of Benton County, Oregon, in *State v. Bloor*, No. 18036, dated December 14, 1960, and the order denying a motion to set aside the plea of guilty dated November 30, 1960, are void and are of no effect in that the order setting aside the sentence could not be acted upon by the Circuit Court of Benton County until the appeal in *Bloor v. Gladden* (Marion County) had been heard and determined."

In support of the contention just quoted the defendant cites *State v. Jackson*, 228 Or 371, 365 P2d 294, which this court decided upon the same day as *State v. Bloor*. The defendant in the Jackson case was indicted by a grand jury May 18, 1960. On August 18, 1960, Jackson moved to dismiss the indictment on the ground that he had not been brought to trial within a reasonable time as required by ORS 134.120. August 26 his motion to dismiss was heard; it was denied by an order entered September 1. The defendant promptly filed notice of appeal from the order of September 1. September 6 the circuit court tried Jackson upon the charge stated in the indictment and found him guilty. Upon appeal to this court the defendant argued that the judgment of guilt was void

because the trial was conducted while there was pending in this court the appeal from the order which denied his motion to dismiss the indictment. Since ORS 19.033 (1) prescribes that "When the notice of appeal has been served and filed as provided in ORS 19.023 to 19.029, the Supreme Court shall have jurisdiction of the cause," this court, in an opinion written by Mr. Justice LUSK, held that after the notice of appeal had been duly given jurisdiction over the cause was in this court, and the circuit court could not try the case.

It will be noticed that in *State v. Jackson,* supra, the notice of appeal which we held transferred jurisdiction over that cause from the circuit court to this court was given in that very case itself. The counterpart of that situation is not represented by the case now before us. The defendant, Bloor, invites us to hold that an appeal taken by him from an order entered by the Circuit Court for Marion County in *Bloor v. Gladden* terminated the jurisdiction of the Circuit Court for Benton County over *State v. Bloor.*

*State v. Bloor* had its inception when the grand jury of Benton County indicted Bloor upon a charge of rape. December 22, 1958, five days after the return of the indictment, the defendant was arraigned and plead guilty. January 22, 1959, sentence was pronounced and the defendant entered the penitentiary. May 31, 1960, Bloor, as plaintiff, instituted the proceeding entitled *Bloor v. Gladden* which is mentioned in the above quotation. The defendant in that proceeding is the Warden of the Oregon State Penitentiary. The proceeding was instituted in the Circuit Court for Marion County under the provisions of ORS 138.510 through 138.680 (Post Conviction Hearing Act) for post conviction relief. The relief which Bloor, as plaintiff in that case, sought is fully reported in *State*

*v. Bloor* and *Bloor v. Gladden.* Upon the trial of *Bloor v. Gladden* Bloor was not given all of the relief which he sought and thereupon appealed to this court by a notice of appeal filed October 11, 1960. He now claims that that notice of appeal ended the jurisdiction of the Circuit Court for Benton County to proceed any further with *State v. Bloor*; that is, he claims that the jurisdiction of the court was terminated until *Bloor v. Gladden* was decided.

We now return to the developments in *State v. Bloor.* The indictment in it was returned by the grand jury of Benton County, as we said, December 17, 1958. December 22 the defendant plead guilty. After he had been sent to the state hospital for the psychiatric examination required by ORS 137.112 and had been returned to Benton County he was sentenced to a term in the Oregon penitentiary. November 30, 1960, the defendant filed a motion in *State v. Bloor* (Benton County) in which he sought relief from his plea of guilty and permission to plead not guilty. The grounds of his motion are set forth in *State v. Bloor.*

It will be remembered that Bloor, as plaintiff in *Bloor v. Gladden,* gave notice of appeal October 11, 1960, from the judgment entered in that proceeding and that he claims that his notice of appeal brought to a halt the jurisdiction of the circuit court in *State v. Bloor.* His motion to vacate his plea of guilty in *State v. Bloor* was not filed until November 30, one month and nineteen days after the notice of appeal was given. It is under those circumstances that Bloor now argues that the Circuit Court for Benton County (in *State v. Bloor*) "had no jurisdiction of the cause between October 11, 1960, and June 21, 1961, which is the period during which *Bloor v. Gladden* in the Cir-

cuit Court of Marion County, Oregon, No. 49158, was on appeal to the Supreme Court."

Before the Circuit Court for Benton County denied the motions to vacate the plea of guilty and permit Bloor to plead not guilty it conducted an extensive hearing. The nature of the hearing is set forth in *State v. Bloor*. For the purposes of completeness we add that the Circuit Court for Benton County, upon receipt of the order entered by the Circuit Court for Marion County which held that since Bloor was not given a copy of the psychiatrist's report the sentence pronounced January 22, 1959, was invalid, vacated the sentence and pronounced a new one. However, before it had done so Bloor had appealed *Bloor v. Gladden*.

The above are the facts. We believe that it is obvious that the notice of appeal given in *Bloor v. Gladden* did not affect the jurisdiction of the court to proceed with *State v. Bloor*. The two were different cases. ORS 19.033(1), which is quoted in *State v. Jackson,* supra, states:

"When the notice of appeal has been served and filed as provided in ORS 19.023 to 19.029, the Supreme Court shall have jurisdiction of the cause, but * * *."

Plainly the words "the cause" mean the cause in which the notice of appeal was given and not some other cause.

The petition for a rehearing is denied.